FILED

2011 OCT 20 PM 3:08

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Z.T., a minor child,

Petitioner,

v.

Case No.: 3:10-cv-672-J-20JBT

STATE OF FLORIDA, et al.,

Respondents.

______________________________/

# ORDER

This cause is before this Court on Petitioner's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 14, filed February 10, 2011) and Amended Memorandum of Law in Support (Doc. 15, filed February 10, 2011); Respondent St. Augustine Youth Services, Inc.'s Response (Doc. 26, filed March 14, 2011); Respondents State of Florida and State of Florida Department of Children and Families' Amended Response (Doc. 41, filed July 1, 2011) and Notice of Supplemental Authority (Doc. 36, filed June 22, 2011); and Petitioner's Replies (Docs. 34 and 42). On July 13, 2011, a hearing was held on the matter.

## I. Background

Petitioner, Z.T. ("Petitioner"), is a fifteen year-old adolescent male. On July 6, 2009, Respondent Florida Department of Children and Families ("Department") was granted temporary legal custody of Petitioner following his placement in a mental health resource center ("MHRC"), pursuant to Florida Statute § 394.467 ("Baker Act"). After his placement in the MHRC, Petitioner's adoptive parents refused to allow him back into their home and filed a Petition for Voluntary Termination of Parental Rights and Permanent Commitment to the Department. On

October 30, 2009, a Duval County Circuit Judge entered Final Judgment, granting the parents' request to terminate their parental rights and commit Petitioner to the Department's custody.

In November 2009, the Department filed a Motion for Placement of the Child in a Residential Mental Health Treatment Facility or Hospital and to Appoint an Attorney for the Child, pursuant to Fla. Stat. § 39.407(6) and Rule 8.350, Florida Rules of Juvenile Procedure ("Rule"). Attached to the Motion was a psychological evaluation, prepared by Dr. Robin E. O'Hearn in November 2009, which recommended residential treatment. On December 3, 2009, the Circuit Judge granted the motion to the extent Mary K. Brennan was appointed as Petitioner's Attorney Ad Litem to represent him in all future proceedings.

On December 10, 2009, and December 14, 2009, the Circuit Court held a hearing on the request to place Petitioner into residential treatment. Counsel for Petitioner, the Department, and the Florida Guardian Ad Litem Program were present at the hearing. Testimony was received from: Dr. O'Hearn; Dr. Serena Bloomfield, a psychologist who completed an earlier evaluation of Petitioner, on June 17, 2009; Petitioner's therapist and counselor; one of Petitioner's school teachers; Petitioner's foster parent; and Lindsey Huber, Petitioner's case coordinator with the guardian ad litem program. The Court also heard argument from the parties. On December 17, 2009, the Circuit Court granted the Department's motion, determining that "[t]he placement of the child in a residential treatment facility or hospital is in the child's best interest and the placement is the least restrictive setting suited to meet the child's needs." Appendix, Exhibit No. 11 at 2.

On December 29, 2009, Petitioner filed a Motion for Rehearing. However, Petitioner's motion was denied on procedural grounds when he filed a Notice of Appeal with the Florida First

District Court of Appeal. On May 18, 2010, the First District issued a per curiam affirmance of the lower court finding, without attaching an opinion. Following the First District's ruling, Petitioner initiated this action by filing his original Petition with this Court in August 2010.

Petitioner was initially placed in the Daniel Statewide Inpatient Psychiatric Program. However, on January 15, 2011, he was transferred to the care of Respondent St. Augustine Youth Services, Inc., where he currently resides, pursuant to subsequent orders continuing his commitment.

**II. Discussion**

In Florida, § 39.407(6) and Rule 8.350 set out the procedures for placing a child into a residential treatment center after adjudication of dependency. Petitioner argues that he was wrongfully committed under these laws. *See* Doc. 14 at 5; Doc. 15 at 6. Specifically, he claims that he was denied the same substantive and procedural rights as non-dependent children committed under the Baker Act. As such, Petitioner contends that the Florida laws, on their face or as applied, violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and asks this Court to declare the Rule and Statute unconstitutional and order his immediate release from the mental health facility. *See* Doc. 14 at 5; Doc. 15 at 6, 12, 26.

In a claim made under 28 U.S.C. § 2254(d)(1), the petitioner is entitled to habeas relief only if the state court's adjudication of the merits of his claim: 1) "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States;" or 2) "involved an unreasonable application" thereof. "[U]nder the 'contrary to' clause, 'a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case

differently than th[e Supreme] Court has on a set of materially indistinguishable facts.'" *Borden v. Allen*, 646 F.3d 785, 817 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). Petitioner fails to cite any case where the Supreme Court addressed a similar question of law or a materially indistinguishable set of facts. Therefore, this Court's analysis is restricted to Petitioner's "unreasonable application" argument.

"The 'unreasonable application[ ] of clearly established Federal law' clause within § 2254(d)(1) 'permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts" of petitioner's case.'" *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)) (brackets in *Borden*).

> The focus of this inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable. An unreasonable application is different from an incorrect one, and a federal habeas court *may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.* However, AEDPA does not prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced. The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner.

*Williams v. Allen*, 542 F.3d 1326, 1336 (11th Cir. 2008) (internal quotation marks, brackets, and citations omitted) (emphasis added).

When, as here, a federal habeas court is faced with a state appellate court's summary affirmance of a trial court's decision, it should apply the "unreasonable application" standard to the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1289 (11th Cir. 2011) (citing *Harrington v. Richter*, 131 S. Ct. 770 (2011)). The court "must determine what arguments or theories supported or . . . could have supported, the

state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Harrington*, 131 S. Ct. at 786.

**a. Equal Protection**

As an initial matter, it must be noted that Petitioner may not raise a facial challenge against a state rule or statute in this proceeding. Petitioner brings this action through a petition for writ of habeas corpus, under 28 U.S.C. § 2254. The Eleventh Circuit has held that federal "habeas review is no occasion for considering the facial constitutionality of [a state] statute . . . ." *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *see Owens v. McDonough*, No. 4:06-cv-343-MP-WCS, 2007 WL 4370481, at *4 (N.D. Fla. Dec. 10, 2007). This Court recognizes that, recently, a district court within this Circuit analyzed the facial constitutionality of a state statute in a § 2254 proceeding. *See Shelton v. Sec'y, Dep't of Corrs.*, No. 6:07-cv-839-Orl-35-KRS, 2011 WL 3236040 (M.D. Fla. July 27, 2011). However, this decision does not appear to be applicable in this case.

Even so, to state an equal protection claim, Petitioner must show that the State treated other similarly situated persons more favorably than him. *DeYoung v. Owens*, 646 F.3d 1319, 1327 (11th Cir. 2011) (citing *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009)). In addition, because the challenged classification determines only which procedures apply, Petitioner must show that the disparate treatment is not rationally related to a legitimate government interest. *Williams v. Meyer*, 254 F. App'x 459, 462-63 (6th Cir. 2007) (noting that "the [Supreme] Court has analyzed equal protection challenges based upon the application of differing sets of rules under the rational-basis test, even where liberty may ultimately be at

stake"); *see DeYoung*, 646 F.3d at 1327-28.

Relying on *Parham v. J.R.*, 442 U.S. 584 (1979), Petitioner claims his involuntary commitment under § 39.407(6) and Rule 8.350 violated his federal constitutional right to equal protection of the laws "because he was denied the substantive and procedural rights of [non-dependent children committed under] the Baker Act, including its more stringent commitment criteria." Doc. 15 at 10. *Parham*, however, does not require the finding of an equal protection violation here.

In *Parham*, the Supreme Court reasoned that, "[w]hile the determination of what process is due varies somewhat when the state, rather than a natural parent, makes the request for commitment, we conclude that the differences in the two situations do not justify requiring different procedures at the time of the child's initial admission . . . ." 442 U.S. at 617-18. The Supreme Court's decision only touched on the process due when either the state, acting as guardian for the ward, or the natural parent requests commitment of a child. It did not address an equal protection argument. Moreover, here, Petitioner attempts to compare his situation with that of a non-dependent child being involuntarily committed under the Baker Act. Such a comparison is inappropriate for equal protection purposes.

The Baker Act controls the involuntary placement of mentally ill individuals who either cannot care for themselves or are likely to inflict serious bodily harm. *See M.W.*, 756 So. 2d at 105; Fla. Stat. § 394.467(1). It contains specific standards and procedures to address problems unique to the proceeding, such as the right to counsel and an evidentiary hearing, the right to an independent expert examination, and entitlement to a continuance of up to four weeks. Fla. Stat. § 394.467(4)-(6); *compare In re Holland*, 356 So. 2d 1311, 1313 (Fla. 3d DCA 1978) ("We fully

recognize that *involuntary* hospitalization is a massive deprivation of liberty which the state cannot accomplish without due process of law. The required due process safeguards are spelled out in the Baker Act . . . and in the state and federal constitutions . . . ." (emphasis added)), *with Parham*, 442 U.S. at 603-04, 617-18 (determining that Georgia's statutory scheme for voluntarily commitment of children by natural parents, which did not require a finding of dangerousness or a formal hearing even where the child objected, was not unconstitutional; and that the state should follow the same procedures when it moves for the initial admission of state wards).

In Petitioner's case, though he may have objected to his placement, it was not involuntary for Baker Act purposes. *See M.W. v. Davis*, 722 So.2d 966, 968 (Fla. 4th DCA 1999) (decision approved by *M.W. v. Davis*, 756 So.2d 90 (Fla. 2000)) (concluding it was not an "involuntary commitment requiring a Baker Act hearing" where "a child has been committed to the temporary legal custody of the Department . . . , and the Department is seeking the residential treatment"). Petitioner, having been previously adjudicated dependent, was recommended for residential placement by his legal custodian at the time, the Department. *See* Rule 8.350. As legal custodian, the Department was obligated to protect Petitioner. *See* Fla. Stat. § 39.01(75). Such a duty might reasonably require the Department to seek residential placement even in cases where the Baker Act standards are not met. *See, e.g., Parham*, 442 U.S. at 601 ("The pattern of untreated, abnormal behavior–even if nondangerous–arouses at least as much negative reaction as treatment that becomes public knowledge. A person needing, but not receiving, appropriate medical care may well face even greater social ostracism resulting from the observable symptoms of an untreated disorder."); *M.W.*, 756 So.2d at 105 (noting that "[b]oth the Department and the Guardian Ad Litem Program of the Eleventh Judicial Circuit amicus . . . expressed concern that

the Department should not be limited to placing a dependent child in a residential psychiatric treatment only in those situations where the child is so disturbed that the child meets the criteria of being manifestly incapable of surviving alone or dangerous").

In addition to the inherently different situations that faced Petitioner, a child already adjudicated dependent, and children who were not yet in the Department's legal custody, there are pragmatic reasons for requiring alternate procedures. For instance, the Florida Supreme Court has recognized that, "[i]n contrast to the ongoing judicial supervision of dependency court proceedings, the proceeding contemplated by the Baker Act is an entirely new proceeding . . . ." *M.W. v. Davis*, 756 So. 2d 90, 105 (Fla. 2000). The court noted that,

> Considering the statutory framework of Chapter 39 and the ongoing judicial review once a child is adjudicated dependent, it is reasonable to conclude that the Legislature would require different procedures to apply when the Department takes the extraordinary step of requesting the court to order residential mental health treatment for a child who is not yet in its temporary legal custody versus a child who has been adjudicated dependent and placed in the Department's legal custody.

*Id.* Similarly, the record demonstrates that, in this case, Petitioner also had a long history of review with the state. *See* Appendix, Exhibit Nos. 2 (Dependency Shelter Order detailing Petitioner's prior admittance to an MHRC under the Baker Act); 3 (Final Judgment for Voluntary Termination of Parental Rights and Permanent Commitment and Disposition). Thus, even if an equal protection comparison were appropriate, it would not have been unreasonable for the State to determine that any disparate treatment was rationally related to legitimate government interests.

**b. Due Process**

At the June 13, 2011 hearing, Petitioner represented that this is solely an equal protection case. Nevertheless, to the extent his claims may be construed as a due process challenge, it appears that the procedures provided to Petitioner satisfy minimum due process requirements.

In *Parham*, the Supreme Court concluded that

> the risk of error inherent in the parental decision to have a child institutionalized for mental health care is sufficiently great that some kind of inquiry should be made by a neutral factfinder to determine whether the statutory requirements for admission are satisfied. That inquiry must carefully probe the child's background using all available sources, including, but not limited to, parents, schools, and other social agencies. Of course, the review must also include an interview with the child. It is necessary that the decisionmaker have the authority to refuse to admit any child who does not satisfy the medical standards for admission. Finally, it is necessary that the child's continuing need for commitment be reviewed periodically by a similarly independent procedure.

442 U.S. at 607 (internal citations and quotation marks omitted). As mentioned above, the Court went on to recognize that while "what process is due varies somewhat when the state, rather than a natural parent, makes the request for commitment, . . . the differences in the two situations do not justify requiring different procedures at the time of the child's initial admission to the hospital." *Id.* at 617-18.

Here, the state trial court appointed Petitioner an attorney at the outset of the case. Appendix, Exhibit No. 8. Petitioner was granted a hearing before a state court judge, where he was permitted to present evidence in support of his position. *See* Appendix, Exhibit Nos. 9, 10. Along with the psychological evaluation prepared by Dr. O'Hearn, the judge considered the positions of psychologists who had interviewed Petitioner, Petitioner's therapist and counselor, his teacher, and his foster parent. *Id.* Further, pursuant to Rule 8.350(b), Petitioner's placement

is subject to continuing residential placement reviews. As such, it appears Petitioner received more than what was constitutionally required for his placement.

**III. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)**

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Accordingly, it is **ORDERED:**

1. Petitioner's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 14, filed February 10, 2011) is **DENIED** and this action is **DISMISSED WITH PREJUDICE;**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice;

3. If Petitioner appeals the denial of the Petition, this Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to **CLOSE** this case.

**DONE AND ENTERED** at Jacksonville, Florida, this 20th day of October, 2011.

**HARVEY E. SCHLESINGER**
United States District Judge

Copies to:

Mary Kathryn Brennan, Esq.
Tracy S. Carlin, Esq.
Caroline Johnson Levine, Esq.
Andrew Taylor Morgan, Esq.
Julie K. Kurtz, Esq.